Rev. Vivan T. RHODES and Pearl RHODES *v.*
WESTSIDE FREE WILL BAPTIST CHURCH, et al.

86-265                                    729 S.W.2d 171

Supreme Court of Arkansas
Opinion delivered May 18, 1987

*R. H. "Bud" Mills, P.A.*, for appellants.

*Larry D. Douglas*, for appellees.

TOM GLAZE, Justice. The case involves a dispute over church property. Claiming ownership of the property, Reverend Vivan Rhodes and his wife, Pearl, brought this action, requesting the appellees be enjoined from entering or trespassing on it. Appellees, representatives and trustees of the Westside Free Will Baptist Church (Westside Baptist), answered and counterclaimed, and, among other things, denied the Rhodes's allegation of ownership. After the Rhodeses presented their case-in-chief at trial, appellees moved to dismiss the Rhodes's complaint, saying the Rhodeses had failed to make a prima facie case. The chancellor granted appellees' motion, and, on appeal from that decision, appellants list one point for reversal, *viz.*, that they had presented sufficient evidence to sustain their claim. We disagree, and, therefore, affirm.

The facts leading to this controversy are largely undisputed. By warranty deeds in 1959 and 1968, Reverend Rhodes and his now-deceased wife, Irma, conveyed two tracts of land to the trustees for the Peoples Mission, their successors and assigns. Both deeds contained a reverter clause that stated "should this property cease to be used for religious purposes then it should revert to the grantors, their heirs and assigns." Reverend Rhodes was pastor at Peoples Mission, a non-denominational church, and during his participation at Peoples Mission, various church buildings were constructed on the property, culminating with the completion of a fellowship hall in 1968. Rhodes remained active in the church until September 1982, when he entered the hospital. Due to health and other problems, he became inactive and was away from the church. It was during this period of Rhodes's absence from Peoples Mission that changes began to occur.

Rhodes's son, appellee Garry Rhodes, began taking a more active role in the church's affairs. Garry said that he was asked by his father to call a Reverend Donnie Villines, who was subsequently selected in December 1982 as the new pastor of Peoples

Mission. In early 1983, church members met and voted to formally organize the church, naming it the People's Mission Independent Baptist Church. The members adopted a constitution and bylaws, elected its officers, named new trustees and formally hired Reverend Villines as the pastor. Later, the newly-formed church hired another pastor, and, under his auspices, the church, in March 1985, was renamed the "Westside Free Will Baptist Church."

In August 1985, Reverend Rhodes, who had remarried, moved back into his house which is located on property near the church. On August 1, 1985, Rhodes and Arthur Sutherlan, as the two surviving trustees of Peoples Mission, held a meeting. At that meeting, the two men executed a deed, describing the property earlier deeded Peoples Mission in 1959 and 1968, to Rhodes, as grantee. In turn, Rhodes signed a deed to this property, naming him and his wife grantees. In September 1985, Rhodes and his wife filed this suit against the Westside Baptist Church, its pastor and trustees, including his son, Garry.

We should first make it clear that appellants have never contended that the newly-established church was illegally formed or that trustees were not duly elected. While Rhodes has steadfastly complained that he and Sutherlan, as trustees of the original church, were never notified that the Peoples Mission would be formally organized, he does not assert title to the disputed property as a result of the church members' failure to legally organize Peoples Mission into a different legal entity—which eventually became a denominational church named Westside Baptist Church. Appellants, instead, filed this action against Westside Baptist Church and its trustees, who, as parties in this case, are successor trustees to those previously named for Peoples Mission in the 1959 and 1968 deeds.

Under appellants' theory of the case, Rhodes asserts that the appellees violated the reverter clauses contained in the 1959 and 1968 deeds, and, as a consequence, the title to the church property reverted to him, as grantor. Our court, of course, has long held that slight circumstances will often be seized upon to prevent a forfeiture. *Jeffries* v. *State, Use of Woodruff County*, 216 Ark. 657, 226 S.W.2d 810 (1950) (wherein the court affirmed the chancellor's decision not to approve a forfeiture when the deed given Woodruff County restricted the use of the

property to "county purposes.")

When we review the record at bar, we find no evidence that appellees breached the "religious purposes" restriction contained in the 1959 and 1968 deeds. In fact, Rhodes tacitly conceded throughout his testimony that the property he had conveyed to Peoples Mission is still being used for religious purposes. Rather, his chief complaint is that he never intended the property to be used by a denominational church, and, for that reason, he had the reverter clause placed in both deeds. Although we understand Rhodes's disappointment in the changes made in Peoples Mission after he became inactive, our study of the record leaves no doubt that the property he conveyed to the church in 1959 and 1968 is still being used for religious purposes, albeit denominational and Baptist ones.

Based on the evidence presented, the chancellor clearly was correct in finding that the appellants failed to make a prima facie case to invoke the deeds' reverter clauses. Accordingly, we affirm.